# EXHIBIT 1

# Bauman v. Twp. of Tittabawassee

United States District Court for the Eastern District of Michigan, Northern Division

October 30, 2014, Decided; October 30, 2014, Filed

Case No. 14-cv-12841

**Reporter**
2014 U.S. Dist. LEXIS 153905; 2014 WL 5499285

ANDREW BAUMAN, Plaintiff, v. TOWNSHIP OF TITTABAWASSEE, Defendant.

**Prior History:** Bauman v. Twp. of Tittabawassee, 2014 U.S. Dist. LEXIS 100832 ( E.D. Mich., July 24, 2014)

**Counsel:** [*1] Andrew Bauman, Plaintiff: Philip L. Ellison, Outside Legal Counsel PLC, Hemlock, MI.

**Judges:** THOMAS L. LUDINGTON, United States District Judge.

**Opinion by:** THOMAS L. LUDINGTON

## Opinion

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Andrew Bauman initiated this case by filing a complaint on July 21, 2014. He alleges that Defendant Township of Tittabawassee ("Township") violated his substantive due process rights under the Fourteenth Amendment by constructing a sidewalk on his property. At the time of filing his complaint the sidewalk had not yet been constructed. Bauman moved this Court for a temporary restraining order to enjoin the installation of the sidewalk. That motion was denied. The Court directed Plaintiff to serve the Township and then, if he so chose, to file a motion for a preliminary injunction. Plaintiff served the Township and then filed motion for a preliminary injunction. A hearing on the motion was held on October 8, 2014.

### I.

In his complaint Bauman alleges that his substantive due process rights were violated through the "installation of a sidewalk upon the Property [of Bauman]." ECF No. 1, Pl. Compl. at ¶20. He claims that "[t]he various ordinances [governing the sidewalk] fail to survive substantive due process [*2] review for failing to be narrowly tailored to serve a compelling state interest." Id.

### A.

Bauman owns a piece of property commonly known as 10285 Scott Road in Freeland, Michigan ("Property"). Freeland is an unincorporated community located with the Township of Tittabawassee. The Defendant Township "is a municipal corporation formed under the laws of the State of Michigan[.]" ECF No. 10, Pl. Mot. Br. at 3. In 1999, the Township adopted Ordinance 58-33. ECF No. 13, Def. Resp. Ex. 2 at ¶6. That ordinance mandates sidewalks on both sides of certain designated roads within the township. Id., Ex. 3 at 1-2. Scott Road is one of these roads.

### B.

Recently, the Township decided to construct a sidewalk on or near Bauman's property pursuant to Ordinance § 58-33. Part of the sidewalk construction took place on a parcel of land to the east of Bauman's driveway. Both parties agree that this construction did not take place on Bauman's land. See ECF No. 13, Def. Resp. Ex. 2 at ¶4; ECF No. 14, Pl. Reply Br. at 3. Another section of construction occurred, as Bauman alleges, across

his property. ECF No. 14, Pl. Reply Br. at 3. According to the Township, they "offered Plaintiff $2500.00 if the Sidewalk were placed [*3] on his property." ECF No. 13, Def. Resp. Ex. 2 at ¶5. Defendant rejected the offer. *Id.* The Township contends that the land on which the sidewalk was in fact constructed "is located within the Saginaw County Road Commission right of way." ECF No. 13, Def. Resp. Ex. 2 at ¶4. Plaintiff asserts that even if that is true he "is the owner of property and has a public sidewalk which crosses his property, with no fee title in favor of the Township or the Road Commission to the west of Plaintiff's driveway." ECF No. 14, Pl. Reply Br. at 3.

C.

Sidewalks are governed by section 58 of the Township's ordinances. See Code of Ordinances, Tittabawassee Township, http://www.tittabawassee.org/uploads/1/9/0/1/19016699/code_of_ordinances_tittabawassee_twp..pdf. Under this section the rights and responsibilities of private landowners and the Township with respect to sidewalks are enumerated. As noted above, subsection 33 designates certain roads on which it is required to have sidewalks on both sides of the street. Subsection 35 addresses the maintenance of the sidewalks and driveway approaches.

Section 58-35(a) addresses circumstances where a sidewalk crosses or adjoins the property of a landowner. No definition is given in the ordinances for "crossing" or "adjoining." Section 58-35(b) addresses circumstances where the sidewalk falls between [*4] the lot line of a landowner's parcel and the street curb. These landowners are called "abutting property owners" by the ordinance and are divided into two classes. The first class makes up all individuals with property abutting a sidewalk. The second class carves out an exception from those individuals for all property owners whose tract abuts a sidewalk along a specifically designated street in § 58-33. There is no explicit definition in subsection 58-35(b) for "abutting" but, implicitly, it is any property that meets the description in subsection (a).

Section 58-36 addresses the allotment of construction and repair expenses associated with the Township's sidewalks. Subsection (b) states:

> Unless otherwise approved by the township board, the expense of construction of such sidewalks, as designated in section 58-33, shall be charged as follows:
>
> (1) In newly developed subdivisions, the entire cost shall be borne by the developer.
>
> (2) Adjacent to all new construction, regardless of zoning, the entire cost shall be borne by the developer or property owner.
>
> (3) Adjacent to all existing developments containing any multifamily use with more than two units and all developments zoned or used for commercial or industrial purposes, the cost will be shared equally [*5] by the township and owners of these premises.
>
> (4) Along designated roads adjacent to existing R-1 and R-2 development, the entire cost of original construction shall be borne by the township.

No exception is listed in section 58-36 for section 58-33 roads. Despite the title of the section: "Construction or repair expense," there is no mention of repair expenses in subsection (b). Relatedly, subsection (c) provides the manner in which certain construction and repair expenses may be assessed. Subsection (c)(2) provides that "the township board may require the owners of any lot or premises to build or repair such sidewalks within such time and in such manner as the township board may require[.]" The ordinance is not clear as to whether the classification system of subsection (b) applies to the imposition of repair obligations under subsection (c). Bauman contends that it does not. The Township makes no arguments regarding the applicability of subsection (c).

**D.**

As of this date the sidewalk on Bauman's property has been completed. There is no evidence in the record that any fine or maintenance obligation has been imposed upon or charged to the Plaintiff. Bauman contends that it is only a matter of time until such inevitably occurs and seeks a preliminary injunction to enjoin the enforceability of the [*6] ordinance pending the greater relief he seeks: removing the sidewalk or striking down the ordinance. ECF No. 10, Pl. Mot. Br. at 3.

**II.**

**A.**

The Court first notes that Plaintiff did not represent that he sought concurrence in his motion, as required by the Eastern District of Michigan Local Rules.[1] The Defendant mentions in its submission that concurrence was not sought and this is confirmed by the Plaintiff's reply brief. ECF No. 14, Pl. Reply Br. at 3 n.3. Local Rule 7.1(a)(1) provides: "The movant must ascertain whether the contemplated motion . . . will be opposed." If a movant cannot obtain concurrence, the motion must represent that either (1) "there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought" or (2) the movant made "reasonable efforts" but was "unable to conduct a conference." E. D. MICH. LR 7.1(a)(2)(A)-(B). Furthermore, in the July 24, 2014 Order Denying a Temporary Restraining Order, the Court directed Bauman to serve a copy of the order on the Township "then file proof of service on the Court's docket." [*7] ECF No. 4 at 6. Thus, the Court explicitly directed Bauman to put the Township on notice as to the impending motion for a preliminary injunction in order to bring an end to ex parte proceedings. The Plaintiff is therefore encouraged to familiarize himself with the Local Rules. Copies of the Local Rules are available both in print and online. The parties may order print copies from the Clerk's Office, E.D. MICH. L.R. 1.3, or they may access the rules online at http://www.mied.uscourts.gov/Rules/LocalRules/civilRules.cfm.

**B.**

The test for whether a preliminary injunction should be granted is settled law. A district court must weigh the following factors in reaching its decision:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*ACLU v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003) *aff'd sub nom. McCreary County v. ACLU*, 545 U.S. 844, 125 S. Ct. 2722, 162 L. Ed. 2d 729 (2005) (quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)). A district court must [*8] balance these factors, as no factor is a prerequisite to the issuance of a preliminary injunction. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566 573 (6th Cir. 2002). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.*

**III.**

While Bauman correctly states that a court need not give specific weight to each factor, nor find each factor met, he contends that each nevertheless favors him.

**A.**

---

[1] The Court reminds the parties that the Local Rules are not optional: "[The Local Rules] shall govern all applicable proceedings brought in this Court . . . ." E. D. MICH. L.R. 1.1(d).

First, Bauman alleges that he will succeed on the merits of his claim. To substantiate this assertion he primarily relies on a case out of this Court that he contends is controlling, *Shoemaker v. City of Howell*, 982 F. Supp. 2d 745 (E.D. Mich. 2013). The Court held that private citizens have a fundamental right not to have imposed upon them the obligation to maintain public property. *Id.* at 757. "[S]uch action strikes at the very heart of the freedoms and liberties the United States has come to represent." *Id.* at 757-58. Shoemaker is the only case that holds the freedom from such imposition to be a fundamental right. *Id.* at 757. As the Court recognized, uncovering fundamental rights protected by the Fourteenth Amendment is not lightly undertaken. *Id.* Accepting the reasoning of *Shoemaker* as advanced by Bauman, he makes out a claim for a likelihood of success on [*9] the merits.

**B.**

Bauman asserts an ability to show two areas in which he will suffer irreparable harm. Under the irreparable harm inquiry it must be demonstrated by the moving party that harm is indeed irreparable. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974). In evaluating the harm that will occur absent a stay the court generally looks to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

Bauman first claims that a constitutional violation amounts *per se* to irreparable harm. Second, he claims that his inability to recuperate attorney's fees under the "American Rule" against cost-shifting also amounts to irreparable harm. Neither of Bauman's claims have merit. His claim of a constitutional violation can be adequately remedied at law and the loss of attorney's fees does not amount to irreparable harm under the current law governing preliminary injunctions.

**1.**

Bauman's primary claim that he will suffer imminent irreparable harm or a threat thereof [*10] is that actual or potential violations of constitutional rights are *per se* irreparable. He cites once again to *Shoemaker* to demonstrate that his rights will be violated by the ordinance. As noted above, the Court need not address *Shoemaker* on the merits. Assuming, *arguendo*, that such a fundamental right exists, Bauman must still show imminent irreparable harm or the threat of irreparable harm.

Bauman emphasizes *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir.), in support of his claim that the threat of a violation of a constitutional right constitutes *per se* irreparable harm. But the rule Bauman cites is not so categorical. "The case law is replete with examples of courts finding no irreparable harm despite the allegation of a constitutional violation where the only remedy would be monetary in nature." *Hamlyn v. Rock Island Cnty. Metro. Mass Transit Dist.*, 960 F. Supp. 160, 163 (C.D. Ill. 1997).[2] The primary focus

---

[2] The *Hamlyn* decision helpfully collects a list of cases where courts found no irreparable harm despite a constitutional violation:

> For instance, in a procedural due process action, there is no harm where the injury is ultimately redressable through monetary compensation. *See Sampson v. Murray*, 415 U.S. 61, 89-92, 94 S.Ct. 937, 952-54, 39 L.Ed.2d 166 (1974); *Wisconsin Central Ltd. v. Public Service Commission*, 95 F.3d 1359, 1369-70 (7th Cir.1996); *Cunningham v. Adams*, 808 F.2d 815, 822 (11th Cir.1987); *Roberts v. Van Buren Public Sch.*, 731 F.2d 523, 526 (8th Cir.1984); *Ciechon v. City of Chicago*, 634 F.2d 1055, 1057 (7th Cir.1980); *Kennedy-Kartheiser*, 1987 U.S. Dist. LEXIS 8455, 1987 WL 17164, at *1.3 Likewise, the Seventh Circuit has held that no irreparable harm existed in a First Amendment retaliation action where the only injury would be the plaintiff's expense of defending against the suit. *Smart v. Board of Trustees of Univ. of Illinois*, 34 F.3d 432, 435 (7th Cir.1994).

*Hamlyn*, 960 F. Supp. at 163.

of the rule is on the infringement, or threatened infringement of First Amendment rights, "rights which must be exercised within a certain period of time," or other "injur[ies] which cannot be compensated by monetary damages alone." *Id.*[3] In the years since *Hamlyn's* survey of the law addressing irreparable harm in connection with constitutional violations the law has not broadened. *See, e.g., Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014) (reciting the rule of *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) that the loss of First Amendment freedoms [*11] constitutes irreparable injury); *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014) ("In cases implicating the First Amendment, the other three factors often hinge on this first factor."). Bauman does not advance, and the Court is not aware of, any case where the threat of a violating a substantive due process right was considered irreparable harm of the type to be protected by a preliminary injunction. *Bonnell* itself concerned a First Amendment violation, despite the broad language cited by Bauman. 241 F.3d at 802.[4]

Even in the case of a constitutional violation such as the violation of a substantive due process right, courts will hesitate to find irreparable harm where any potential harm is readily compensable by damages. In fact, the case on which Bauman relies, *Shoemaker*, demonstrates just that proposition. In *Shoemaker* the plaintiff had been repeatedly fined and his amount owed to the city of Howell totaled $600.00. 982 F. Supp. 2d at 750. The court in *Shoemaker* did not indicate that any harm suffered by Shoemaker went beyond mere monetary damage. The same is the case here.

Based on the [*13] ordinance the most that Bauman can be held responsible for financially is expense of removing snow and manmade obstructions and compensating for any Township-ordered repairs. Code of Ordinances, Tittabawassee Township §§ 58-35, 58-36. *Shoemaker* does stand for the proposition that imposing maintenance and repair obligations[5] would, as discussed above, violate the Fourteenth Amendment. It also establishes that any harm sustained by Bauman can be compensated by a damage award. Any cost imposed by the Township on Bauman for failure to act in compliance with the ordinance can be ordered to be reimbursed by the Township if Bauman is successful on the merits.

---

[3] Once again, *Hamlyn* offers a helpful, though slightly dated, collection of caselaw on point:

> In contrast, those cases which have held that a constitutional wrong constitutes an irreparable injury involve some continuing or future injury which cannot be compensated by monetary damages alone. Examples include a First Amendment [*12] claim that one's speech is presently being chilled, *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689-90, 49 L.Ed.2d 547 (1976); *National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1013 (7th Cir.1990); *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir.1969), a Due Process or Eighth Amendment allegation concerning a continued threat to a prisoner's health or safety, *Preston v. Thompson*, 589 F.2d 300, 302-03 & n. 3 (7th Cir.1978); *Jolly v. Coughlin*, 894 F.Supp. 734, 740 (S.D.N.Y.1995), aff'd, 76 F.3d 468, 482 (2d Cir.1996); *Young v. Ballis*, 762 F.Supp. 823, 827 (S.D.Ind.1990), the loss of fundamental rights which must be exercised within a certain period of time, such as the right to vote or to have an abortion, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir.1981); *Doe v. Mundy*, 514 F.2d 1179, 1183 (7th Cir.1975); *Auerbach v. Kinley*, 499 F.Supp. 1329, 1340-41 (N.D.N.Y.1980), a claim that one will be subjected to an unlawful search and seizure under the Fourth Amendment, *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir.1983); *Bannister v. Board of County Comm'n of Leavenworth County, Kansas*, 829 F.Supp. 1249, 1252 (D.Kan.1993), and an unconstitutional taking of property (on the basis that property is always "unique"). *United Church of the Medical Ctr. v. Medical Center Comm'n*, 689 F.2d 693, 701 (7th Cir.1982).

*Hamlyn*, 960 F. Supp. at 163.

[4] It should be noted that even if Bauman can show that the rule has been broadened beyond non-monetary constitutional violations such as Free Speech and Equal Protection violations, he has not shown that the statute actually violates the constitution. *Shoemaker* held that the City of Howell's ordinance was unconstitutional as applied to Shoemaker. Here, Bauman does not allege facial unconstitutionality and to the extent he does, does not offer sufficient evidence to support his claim that the facially unconstitutional statute will result in imminent irreparable harm to him.

[5] *Shoemaker* does not stand for the proposition that imposing the obligation to remove manmade obstructions violates the Fourteenth Amendment.

2.

As an additional ground for showing irreparable harm Bauman claims that in any possible action he will be precluded from recovering attorney's fees under the "American Rule." The Rule refers to the maxim of the United States' legal system that "litigants are generally expected to pay their own way" through the course of litigation. *Mills v. United Producers, Inc.*, No. 11-13148-BC, 2013 U.S. Dist. LEXIS 8149, 2013 WL 228086 at *2 (E.D. Mich. Jan. 22, 2013). A court will only award fees where there is express statutory authority for doing so. See *Tucker v. Sterling Jewelers, Inc.*, No. 09-14102, 2012 U.S. Dist. LEXIS 89912, 2012 WL 2501120 at *4 (E.D. Mich. June 28, 2012). Bauman alleges that the expense [*14] of compensating his attorney will go unreimbursed due to the American Rule. Correct. But the law is clear in providing that this does not constitute irreparable harm. In *Renegotiation Board v. Bannercraft Clothing Company*, 415 U.S. 1, 24, 94 S. Ct. 1028, 39 L. Ed. 2d 123 (1974), the Supreme Court held that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." In light of this authority, Bauman cannot use the American Rule as a basis for alleging irreparable harm.

C.

Bauman claims that if an injunction were to issue there would be no substantial harm to others. In support of this assertion he alleges that "[t]he public will be better guarded if the Township is obligated to maintain those sidewalks which it installed and Plaintiff does not wish and cannot to [sic] protect at his own expense." ECF No. 10 at 13. This may be so. Bauman is probably right that the Township possesses more resources than he. But he does not explain how imposing the obligation to maintain the sidewalk on him, rather than the Township imposes a greater risk of harm to others than the reverse. Bauman's proximity to the sidewalk and ability to respond quickly to any obstruction, such as snow, carry considerable advantages to the public that may be using the pedestrian right-of-way. [*15] If Bauman is indeed saddled with the obligation to maintain the sidewalk under the ordinance, the harm to others would be equal whether or not a preliminary injunction is entered enjoining the effect of the ordinance.

D.

Lastly, Bauman asserts that the public interest is best served by entering a preliminary injunction. Bauman writes:

> Lastly, the public interest is assuring proper constitutional application of its local government clearly outweighs any counter-interests in convenience the Township may suffer as a result of its own decision to install the sidewalk despite the concerns the Township was on notice as existing via this lawsuit [sic throughout].

ECF No. 10 at 13. It appears that Bauman's argument is that the public interest in proper application of the Township's ordinances outweighs any benefit that would flow to the public from having a sidewalk cross his property. Perhaps. But this assertion by Bauman highlights a more significant issue in the case: that all of this is moot if the Township possesses an easement or right-of-way across Bauman's property that permits the construction of a sidewalk. If so, the Township, under their ordinance, bears the maintenance responsibilities. [*16]

E.

Even if, despite the above, Bauman could make out a claim for a preliminary injunction, he also fails to establish certain predicate conditions to his claims.

1.

First, *Shoemaker* may not be applicable to Bauman's case. In fact, the question of *Shoemaker's* applicability to Bauman cannot be answered because there is insufficient information to determine important facts. Bauman and his counsel

asserted at the hearing that the ordinance applies to him because there is a presumption under Michigan law that property lines extend to the middle of the public right-of-way which they abut. *See Morrow v. Boldt*, 203 Mich. App. 324, 512 N.W.2d 83, 86 (1994). The Township, on the other hand, claimed that there is a state-law created easement from the center-line of public rights-of-way specifically in place for the construction of sidewalks. The Township alleges that they sought to build the sidewalk across Bauman's property and offered him $2500.00 to do so, which he declined. Instead, they built the sidewalk within their easement.

Bauman does not contest that the Township possesses a sidewalk easement or that the sidewalk is constructed within that easement. An Easement is "[a]n interest in land owned by another person, consisting in the right to use or control [*17] the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." EASEMENT, Black's Law Dictionary (9th ed. 2009). Bauman's central point of contention is that even if the Township possesses such an easement, his fee interest extends to the center line of the street, making him a crossing, not adjoining property owner. Again, perhaps, but Bauman has not advanced any evidence that he owns title to the center of Scott Road west of his driveway. At the hearing, Bauman admitted that he has a survey of his land, but did not submit to the Court that survey or any of the documents relevant to his chain of title. Instead, Bauman submitted a secondary approximation by the Saginaw Area GIS Authority. See ECF No. 10 at Ex. E. But Bauman contests the veracity of his own exhibit and claims that it incorrectly shows the end of his driveway as existing within County Road Commission property to the northeast of his lot. Bauman provides no evidence that he actually holds title to the center of Scott Road, despite acknowledging that he possesses the documents to prove or disprove that fact.[6]

## 2.

Even if Bauman could show that he owns fee title to the center of Scott Road to the west of his driveway, he has offered no evidence that he would then be classified as a crossing property owner. At the hearing, Bauman reiterated the position he advanced in his papers: that the plain text of the ordinance means that the maintenance obligation would apply to him. But the Township contends that Bauman never sought a determination of his obligations under the ordinance and that this would have foreclosed the litigation because the ordinance does not, in fact, apply to him. The Township asserts that the sidewalk easement across the western portion of Bauman's land is a property interest that converts Bauman's status to that of an abutting property owner. As such, the Township claims, Bauman is covered by the exception in Section 58-35(b)(1) and he is not saddled with the maintenance obligation in the ordinance. At the hearing, the Township alleged that both Michigan statutes and case law support the proposition that Bauman [*19] would not be liable for maintenance on the sidewalk. Furthermore, the Township claims, there was a hearing held and determination made in the late 1990's that explicitly placed all Scott Road sidewalk maintenance obligations on the Township.

Bauman advances no evidence that the ordinance applies to him other than his reading of the ordinance's text. Bauman concedes the Township's position that state law imposes upon easement owners any and all duties to maintain the easement in a safe condition. ECF No. 14 at 4 (citing *Morrow v. Boldt*, 203 Mich. App. 324, 512 N.W.2d 83 (Mich. Ct. App. 1994)). Bauman also concedes that Michigan statutes specifically impose this duty on Townships in the maintenance of sidewalks. *Id.* (citing MCL 691.1402a(1)). Thus, Bauman's position boils down to the assertion that the Township "has decided to create liability and obligations for Plaintiff by ordinance . . . not

---

[6] Similarly, the Township did not include a copy of Bauman's [*18] deed or other proof of title that reflects their easement, despite claiming that they possess a right-of-way easement that permits the construction of a sidewalk adjacent to a county road.

otherwise existing under other law." *Id.* But this reading of the ordinance is not certain. In fact, the ordinance is to be read in light of this state law authority, as the Township contends. The ordinance should not be read as imposing maintenance obligations on Bauman.

Ultimately, Bauman's claim that he is faced with sidewalk maintenance obligations rests solely on his interpretation [*20] of the ordinance. The definitions of the different forms of property owners that may or may not face liability are not readily apparent in the text. Exegesis of the ordinance necessitates the use of extrinsic evidence to determine which category a property owner should be placed in. Absent any extrinsic evidence that the Township is interpreting the ordinance in the same manner as Bauman and, as a result, imposing fines or initiating prosecutions, a preliminary injunction is not justified.

IV.

Lastly, it is necessary to address numerous references made by the Township in their response brief to the fact that Bauman may not be permitted to pursue this claim. For example, the Township states at one point that "Plaintiff's motion and his Complaint, are unripe, premature, and unnecessary." ECF No. 13, Def. Resp. Br. at 3. At another point the Township claims that "there is no case or controversy, any claims are unripe and not final, and there is simply no cause of action that exists with respect to this Plaintiff." *Id.* at 7-8. To the extent the Township is moving the Court to dismiss for want of jurisdiction, the claims must be ignored, at least at this juncture. This Court's Local Rules bar pleading [*21] motions seeking affirmative relief in response briefing. E.D. MICH. LR 5.2(e).

V.

Because Bauman cannot show that he meets the requirements for the issuance of injunctive relief, a preliminary injunction will not be entered. Even if Bauman could meet the high showing required for such extraordinary relief, he still fails to demonstrate, in the first instance, the necessary facts to support his claim of a constitutional violation.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 10) is **DENIED**.

Dated: October 30, 2014

s/Thomas L. Ludington

THOMAS L. LUDINGTON

United States District Judge

---

End of Document